This is Prime Insurance Syndicate v. Woods, our case number 4-10-0348. For the appellant, Mr. Messler, for the appellee, Mr. Wills, you may proceed. If it pleases the court. Negligent performance of a voluntary undertaking is an independent tort that is separate and distinct from the tort of negligent hiring and negligent supervision. Despite this, the trial court cites Section B-3-B of Prime's insurance policy in support of its decision to grant summary judgment in favor of the plaintiff. Section B-3-B generally excludes coverage for suits alleging negligent hiring and supervision of employees. The trial court rejected the argument. Were these security guards independent contractors? My understanding is that they were security guards who were agents of base flights. The trial court rejected the argument that negligent performance of a voluntary undertaking differs from negligent hiring and negligent supervision. The court's decision, however, ignores the distinction between the tort of negligent hiring and the separate cause pled by Ms. Woods for negligent performance of a voluntary undertaking. Negligent performance of a voluntary undertaking requires a plaintiff to plead and prove that a defendant undertook to render some service and that that defendant's failure to exercise reasonable care in that undertaking was the proximate cause of a plaintiff's injury. This definition starkly contrasts the definition of negligent hiring and negligent supervision. Most importantly, a plaintiff to successfully plead a negligent hiring and supervision cause must plead that there was some particular unfitness for a position that the owner knew or should have known the employee had and that that particular unfitness was the proximate cause of the plaintiff's injury. Diamond Woods' complaint is not predicated on the premise that Base Flights knew of any particular unfitness that its agent had that would cause them to fail to search their patrons for weapons as they entered the bar. Likewise, the Woods' complaint is not premised upon any condition that this particular unfitness was the cause of Ms. Woods' injury. To the contrary, the Woods' complaint is based upon the voluntary act of Base Place to provide security for its patrons. The complaint alleges that Base Place failed to act with reasonable care in so searching its patrons and thereby caused injury to Ms. Woods. The elements... What about subparagraph E of the complaint that alleged that Base Place negligently hired security guards who were not properly trained and or supervised? I agree that that allegation in and of itself may sustain the plaintiff's cause of action. However, that allegation when read in the entire context of the complaint is unnecessary for the allegations that are put forth and if stricken from the complaint would not defeat the plaintiff's cause of action. It's a colliery allegation that is really unnecessary for the complaint of a voluntary undertaking. Although, it would be the exact type of allegation I'm talking about required for a negligent hiring or supervision were that the complaint that we had alleged. The elements of a negligent performance of a voluntary undertaking are set forth by the restatement of Tort Second and expressly recognized by the Supreme Court of Illinois as a self-supporting cause of action. The trial court erred on this point. It should be reversed. Similarly, the Diamond Woods complaint does not allege a cause of action arising out of an assault and battery or the willful violation of a penal statute. The circuit court does not expressly rule on this issue. However, this review appeals to the denial of the defendant's motion for summary judgment and this issue as well as the remaining issue of notice are directly related to the denial of the defendant's motion. The Woods complaint alleges the base plaintiff negligently by failing to exercise reasonable care to protect against armed patrons from entering upon its premises, failed to exercise reasonable care in performing that undertaking when it is set forth to so prevent. This failure to act was the proximate cause of Ms. Woods' injury. The proximate cause is comprised of two elements, cause in fact and legal cause. The cause in fact in this case, the cause in fact alleged by Ms. Woods in the underlying complaint, is that Diamond Woods would not have been injured but for the failure of base plaintiffs to prevent patrons from entering upon its premises with a weapon when it is set forth to so prevent. The legal cause is that it is reasonably foreseeable that a gunshot wound is the type of injury like a gunshot wound could ensue by failing to reasonably perform this undertaking. The exclusionary language that the plaintiff relies upon applies to the intentional tort of assault and battery but does not incorporate the tort of negligently failing to prevent an assault or battery nor does it incorporate negligently failing to prevent the willful violation of a penal statute. The great majority of the cases cited by the plaintiff on this matter are distinguishable on their face. The distinguishing factor in those cases is that the defendant in those cases personally performed the action that is alleged to be an assault or a battery. Diamond Woods does not allege any action by base place that is alleged to be an assault or battery. Instead, they allege that the negligence allowed for the assault and battery to occur. Well, are you conceding this was a battery? I thought there was something in the record, I think it might be in the claim that was made that this patron was tackled and the gun discharged. I couldn't tell for sure what exactly happened on the night of the incident. It is unclear what exactly happened on the night of the incident except for that the security guards who were in place were checking the male patrons but were not checking the female patrons and the female patron was able to smuggle a gun in her purse. What I'm getting at is if the patron with the gun was tackled or tripped and the gun accidentally discharged, is that a battery? I don't, for the purposes of this case, I don't believe that it's pertinent whether or not the actual shooting consisted of a battery because the focus of the plaintiff's claim and the underlying complaint, Ms. Woods' claim, is whether or not the action of allowing the patron in, that's the point of negligence, that's where the proximate cause of the negligence occurs. The battery itself was allowed to happen. The negligence is not arising out of the assault and battery, the negligence is arising out of their failure to prevent the customer from entering the bar with a gun. Did I adequately answer your question, Justice? Not really because I don't understand the point you're making. To me it seems like there's a difference between when you look at an offensive battery or assault, you've got an intent on the person who's committing the battery to harm somebody and if the gun accidentally discharges, it seems to me that's an accident, it's not a battery. I do agree with you on that point, however, for the purposes of my argument, I believe that it's irrelevant how or why the gun went off because the crux of the negligence, the point of negligence, is not the fact that the gun went off, it was that the patron was allowed to have the gun inside the bar in the first place. The proximate cause following that point of negligence is the injury, which is foreseeable by allowing that gun to enter. And United National Insurance Company really kind of flushes out the distinguishing point that I'm trying to make here, which is a case cited by the defendant, but I think really helps the defendant in this matter. It's a Seventh Circuit case that focuses on the policy language instead of on the actions of the defendant, like the other cases cited. The court in United National reviews policy language very similar to the policy language in this case, under facts which at their core are similar to the facts in this case, although in that case it was a sexual assault and not a gunshot, but nonetheless an intended sexual assault. And although the court rules in favor of the insurance company in that case, they focus upon the language, omission by, contained within the exclusionary language of the policy. And this language is largely and hugely important, as contrasted in this case where the words omission by do not exist. Justice Kadehi interprets the phrase omission by to include actions, causes of actions where an assault and battery is a result of the defendant's negligence, the same as in this case, negligence. And he focuses and says that the crucial language omission by allows for that exclusion to incorporate in a negligent performance of a voluntary undertaking or an act where your negligence allows for the injury to occur, and really distinguishes between the idea of the owner of base place or one of its agents actually committing the assault, which would fall within both the United National and this case's exclusionary language, versus the negligence simply allowing for the battery to occur. In other words, it distinguishes between the act by an agent of assault and battery versus the act of allowing the act to occur by a third party. The language omission by is not contained within the exclusionary language in the prime policy. The Woods complaint alleges that Base Place failed to exercise reasonable care in preventing customers from entering its premises with a weapon, even though it had set out to do so. It does not, the complaint does not state that an agent of Base Place assaulted or battered Ms. Woods, nor does it state that an agent of Base Place assaulted or battered Ms. Woods. Counsel, the briefs refer to two different insurance policies. Which one is this court supposed to analyze in order to resolve the issue here? The first insurance policy, Your Honor. The first insurance policy. Yes, Your Honor. And why is that? And that's the one that was issued for coverage from April, 05 to April of 06, correct? Yes, Your Honor. Okay, why is it that that is the applicable one here? Because that's when the accident occurred. The accident occurred within the time frame of that policy, and it's one of the requirements of the policy that the accident, that this is a recovery case. Is this claims-made? No, Your Honor. It is not. What kind of policy is it, then? It is a manuscript policy, Your Honor. Which is what? I know there's actually a definition of it, which I don't understand, but. Well, a manuscript policy is a policy that is written specifically between two parties. In other words, it's outside of a claims-made policy and an incurrence-type policy, and this policy expressly states that this is not a claims-made policy, nor is it an occurrence-type policy, which means that the language that's actually stated within the policy is what the court should look at to operate. And specifically, there's a vagueness to the requirement that they place for it, which I believe should be read in favor of Ms. Woods, or at base place, as the case may be. That vagueness is that, and if I may read from, I know the rule is not to read from the brief, but if I may read from the brief for the purposes of this, to further my point. It says, generally, coverage is provided hereby only for the following claims. And then it lists that they were made against the insured during the policy period, that the accident occurred during the policy period, and that the written notice was given to the insured during the policy period. That word, generally, is not the strict, precise word that you would expect in a claims-made policy. A claims-made policy is a type of policy that requires notice because they want to assess risk. The word, generally, allows for circumstances to exist where these three requirements are not necessary to be met on their face. That causes it to fall within the cases that I've cited, the Johnson case in particular, where the court says, hey, if you have actual notice of this claim, and you're able to defend it, then the notice requirement doesn't apply. And they admit, in their complaint for declaratory judgment, that they had actual notice of this claim because actual notice is defined as the ability to defend a case. And one of their allegations is that they are defending the case Woods v. Base Place. And so I'm clear. I think I may have muffled what I was trying to say a little bit. The legal definition of actual notice is that you have the ability to know and defend of the lawsuit. They admit in their complaint that they're defending the lawsuit, thereby admitting that they have actual notice, which brings it squarely within the Johnson case and distinguishes all the cases cited by the plaintiff, because all of those cases are for claims-made policies. And this policy specifically states... Maybe you can't answer this, but I'm curious. If the policy, in effect, from April 5, 2006 to April 5, 2007 is irrelevant, why is it pled in the complaint for declaratory judgment? I don't follow why that would even be part of the complaint. Any answer that I would have would be speculating into the mind of who wrote it, but I have an answer. I just don't know if it's right. But I'll provide your answer under that stipulation. I think... Please. I'd love to hear it. I think that the attorney was attempting to have some foresight into possible arguments that I might make, one of which saying, well, the claim was made during the second policy, this 2006 to 2007 policy, but even if I, Diamond Woods, make that argument, it shouldn't matter. I think that that's why, but I'm not sure. I see this as falling within the first policy. It was when the accident occurred. It fits generally the requirements of the policy, and the policy itself says that generally these must be met. However, that vagueness must be construed against the drafter of the contract. And if it allows for a circumstance that permits my client to be indemnified by this contract, then it has to be that that's what the court looks at, because it must be strictly construed against the drafter of the contract. The vagueness of the term generally permits for this to occur. Isn't there a provision that says if the accident occurs during the policy period, including any policy period extended by specifically identified retroactive dates stated on the declarations? So how do we know what's provided in the second policy? In other words, the policy you're from, let's see, is it 06-07 is the second policy? I'm sorry, could you rephrase your question? Okay. If there's a provision that says if the accident occurs during the policy period, including any policy period extended by a specifically identified retroactive date, how are we able to determine on this record whether there was a specifically identified retroactive date or not? I don't know the answer to that, Your Honor. Then my other question is, and maybe this is a better question to ask the other side, but if the manuscript policy requires that the claim be made against the insured during the policy period result from an accident occurring during the policy period and which written notice is given to the insured during the policy period, what would happen if the And that's where my public policy argument comes into play, directly and exactly what Your Honor is talking about, that had this occurred, I believe the policy period was April of 2005-2006, so had it occurred on the last day of the expiration date of the policy, public policy would dictate that it's just unfair for the person who contracted it and who is insured by the contract. And if you look at the factors, the restatement of contract instructs us to take into consideration when considering public policy, the strength of the public policy is manifested by legislation. The legislature clearly favors it when there's an insurance policy that acts in good faith and that the insurer's responsibility always remains to be insured. The likelihood that refusal to enforce the term will further the policy. While refusal to enforce a term that may cause the insurer to not pay on a claim simply because by happenstance it happened on the last day, refusal to enforce that term would certainly further the legislature's manifestation that an insurance policy should cover what it says that it's going to cover, and it should maintain its responsibility to its insurer. The third factor, the seriousness of the misconduct involved and the extent to which it's deliberate, I think it's certainly deliberate to say that all claims on this day, the extent that an insurance company and all of its resources has the ability to review a contract and the extent of thought they put into these contracts, which is their business, it goes without saying that there's a deliberateness to cutting it off on the last day and creating this inequity. Whether it's the last day or the last week, I think that the same inequality is still created. And then the directness of the connection between the misconduct and the term. Your Honor brought up the term itself, and I think that the misconduct also. So the directness is inherent to the term. The misconduct is inherent to the term. Do you know, Mr. Nessler, if a manuscript policy is supposed to reflect a truly negotiated policy, what terms were in fact negotiated here between Base Place and the insurance company? Do you know? I do. Those are the terms that are cited here within the policy. Within the PORSA policy, it says this is a commercial liability insurance policy that is a manuscript policy. There's three terms specifically, and these terms generally apply. In other words, they don't apply in all circumstances, but they apply in some circumstances. Unfortunately, when they apply and when they don't apply is what's left vague. I mean, those terms are that the claim is first made against an insurer during the policy period, that the accident occurred during the policy period, and that written notice. I am out of time. May I finish my statement? Yes. Thank you, Your Honor. And that written notice must generally be provided. The unfortunate part is that the contract is vague on when it generally comes into play and when it doesn't, and because of that vagueness, it must be construed against the drafter. Thank you. Thank you. We'll hear from you on rebuttal. May it please the Court. Since you ended on notice, let me start with that. This is a claims made and reported policy, and then some, because the accident has to happen within the policy period, completely different from an occurrence policy. Lower premiums, Illinois law enforces them. The point is that the insurer knows during a policy year that a claim has been made against its insured and reported to it. It closes its books after each policy year. Lower premium, not an occurrence policy. And they are enforceable. But the policy itself says this is a negotiated agreement entered into between the insurer and the insurer, and as such, it differs significantly from claims made or occurrence-type general liability policies. Right, and it does because usually it's, and if you look at the standards, we have two and three. I'm sorry, one is for claims made during the insurer, during the policy period, and for which written notice is given to the insurer during the policy period. That's claims made or reported. In addition, and that's what makes it different, it has to result from an accident occurring during the policy period. You need all three. And I want to clarify one thing that came up before. The retroactive date on the first policy is the first date of the policy, 4505. Okay? Now, in the second policy period, that would still be the retroactive date, and for every policy after that. So any accidents that happen during any policy period will be covered if the claim is made and reported in the same policy period. That's what a claims made and reported policy is. They are treating it like an occurrence policy, which it isn't. No, it's a manuscript policy, and I'm trying to figure out what is different about a manuscript policy and a claims made policy. Just tell me that. Well, they're two different things. A manuscript policy, it's for hard to get insurance. And you see where Bass Place signed off on the manuscript part of it, of these requirements. It's different from a standard ISO policy. They're hard to get. Usually to get one of these policies regulated by the Illinois Insurance Exchange, you have to be rejected for insurance three times by an admitted carrier. That's why it's manuscript in the sense that there are more exclusions and limitations on the policy. Here, for example, this is a bar. It's a cavern. Hard to write. And what they didn't want to write here, and I'll get to it, is shootings, assaults, and batteries. That's what's excluded from the policy. But let me just get back to the notice for a moment, if I might. So the retroactive date is the first date of the first policy. So if they could have got ten years of policies, that retroactive date would mean any occurrence happening during any of those years would be covered, so long as the claim was made on the insured and reported to the carrier in the same policy year. That's what claims made and reported is. That didn't happen. Well, what happens if the claim occurs on the last day of the policy period, at 1159 p.m.? If the claim is made on the, in other words, a complaint is filed on the last day of the policy? No. Let's say the incident occurs. It would be covered on the next policy because the retroactive date covers occurrences for all. In other words, if the accident happens in policy one and is reported in policy one, fine. How could it be reported? How could it be reported if it happens a second before midnight? Because it would be that when it's reported, when the claim is made on the, the accident isn't the claim. The claim is when the injured party makes a claim on the insured. So it doesn't matter when the accident, if the accident occurred on the last day of the first policy, because of the retroactive date, which covers all accidents that occur as long as you keep getting policies. In other words, the accident occurs on the last day of policy one. Jump ahead two years later, we're in policy three now, and a complaint is filed and the insurer gives notice. So the claim is made and reported in policy three. There's going to be coverage because the retroactive date covers accidents going all the way back to the beginning. What tells us that if we don't have that second policy in the record? Because the first policy has the retroactive date on the deck page, which is the first date of that first policy. And every policy they would have issued after that is always going to have that retroactive date. Okay, but you're asking us to assume something that's not in the record. We don't have the second policy in the record. Yeah, and frankly, I'm not sure why that is, but I can, well, the retroactive date in every case I've ever seen never changes. As long as you keep getting policies from that insurer. What if you don't get a second policy? Then what happens to the incident that occurs on the last day of coverage? If the incident occurs on the last day of coverage, it's not going to be the claim that's going to be made and reported to another policy year. And then you're going to have that carrier, that claims made carrier. Here, for example, the complaint was filed in 2007. That was the claim made on the insurer. And it was reported as a claim in that policy period. There wasn't even a policy period then from Prime. They had given notice of the occurrence earlier on, but that's not what matters for claims made and reported. They have to do that, too. Hey, an accident happened, there may be a claim down the road. That's your typical occurrence notice, which is what they're talking about, actual notice. Yes, we had actual notice of an accident. But the claims made and reported part of the policy means the claim has to be made, complaint filed, and reported to the carrier during the same policy period. So for a claim to be made, there has to be a complaint filed? Well, either a complaint filed or a demand for money, some sort of claim made by the injured party. Just so that we can understand, and maybe you'll say this is never the way it happens. I have a one-year policy. I'm a borrower. The incident occurs on the last night of coverage. I'm the one that's in the hospital. I'm in the hospital, too. I don't notify anybody until a month later. But I don't have insurance with you anymore. I let it lapse. But the thing that I want covered occurred during the policy period. But I have absolutely no evidence. It's impossible for me to give you notice, to file a claim with you. Maybe I'm unconscious to do anything about that coverage. That's what I don't understand. That's an occurrence policy. Well, I don't care. Maybe it was written the same as this one, but I just don't ever get the sequential policy. If you don't get another policy after that, you would have another carrier for the next policy period. Why? Maybe I just let it lapse. Maybe my business went out. Then you don't have insurance. So I don't have coverage. Under a claims-made and reported policy, you would not have coverage for an incident that occurred during a policy period. Unless I gave notice. But you couldn't because there was no claim made. In other words, it's the time the claim is made and reported under a claims-made and reported policy that matters. No matter when the underlying incident occurred. Right. That's an occurrence policy. When the occurrence happened, that triggers coverage. That's the policy that applies when the occurrence happened. So nobody is ever going to want an occurrence policy. Sure. All the time. Most policies are occurrence policies. The occurrence happens in a policy. That policy is triggered. So if it happened on the last day, it's triggered. A claims-made, I mean. Nobody wants a claims-made. You'd rather not have that. You'd rather not have them, but they're cheaper. But they're cheaper. That's the point. And they're cheaper so that the insurer knows. Each year, you can close your books on that policy. And there's a real incentive to renew your policy because it's got the retroactive data. Sure. Or if you're not going to get another policy, you can buy what's called a tail. Which would say, okay, for the next 90 days or 180 days, I want to buy not a policy, but I want to be able to have coverage for any claims. For the previous 12 months. Exactly. That's the difference between. Mr. Wills, you're talking about this as if it's a claims-made policy. It is. But the contract itself says this is not a claims-made policy. It's a hybrid. It's a claims-made plus. Because the requirements are usually on a claims-made, it's there's coverage if the claim is made and reported during the same policy period, which undoubtedly didn't happen here. In addition, the accident has to happen during the policy period. Now, it's possible. What's the policy period in our case? It's 05 to 06 is the first one. And then 06 to 07 is the second one. All right. So there was insurance in effect when the claim was made. And there was insurance. No. Hold on a minute. Let me start over. There was insurance in effect when the incident occurred. Yes. And I thought there was a second policy, and it was in effect when the lawsuit was filed. No. The second policy was over when the complaint was filed and reported to us. There wasn't even any insurance. So what does the second policy have to do with anything about this case? Well, they did give written notice, not of a claim, of an occurrence. But that even happened in the second policy period. It doesn't really count because it's not a claim made by the injured party. So it's wrong with them because the notice happened during the second policy period? Well, the claim was made, the complaint, and notice given of that after the second policy ended. There really was no coverage. But even if you want to give the benefit of the doubt and say that the notice they gave counts, that was in the second policy. But why wouldn't it count if they had insurance in effect for both those coverage periods? Why wouldn't it count? It was like 90 days after the incident occurred that the fax was received. But my understanding from the record, which I'm not sure there was anything I could find that definitively said this, but the owner of Bay's Place gave notice to his agent the day following the occurrence or that day. He did. And that's undisputed. That's undisputed, but irrelevant. Because that isn't notice of a claim. It's a notice that there was an accident that may someday be a claim. Right. Which happened when the complaint occurred. Well, if there's no claim in existence, then he can't give notice of a claim. But he gave notice that there might be a claim. Right. And if there had never been a claim, that would have been it. But giving notice of a claim, a potential claim, you do have to do that, too, under the policy. You have to give notice if... And so you're not arguing that? I'm not arguing... No doubt. I believe the day after the accident happened, they told the broker, hey, there was an accident here yesterday. Okay. But that's irrelevant for a claims made and reported policy. Okay. So now tell me why you think there's no coverage for this incident that was reported almost immediately. Because the claim has to be made by the insured or the injured party on the insured and reported to the carrier, claims made and reported, during the same policy year. And here, the complaint was filed, or claim made, and reported when the policies were done. I don't know if they had another carrier they could have reported this to. Well, they wouldn't cover it. A new carrier is not going to cover an incident that occurred when they were not providing coverage. If there was a new policy in place after our second policy ended, and a complaint was filed and reported to that carrier, of course they did have to. That's what a claims made and reported policy is. So if there had been a third policy period with someone else. Well, your own policy says that it has to result from an accident occurring during the policy period. Right. So how could the accident occur during a policy period where the policy wasn't in effect at the time of the accident? That's what our policy says. But we have a retroactive date, which lets you go back for occurrences that happened over more than one policy period. So if the claim is made and reported in, say, the third policy period, for an accident that occurred in the second policy period, it would be covered because the retroactive date incorporates that occurrence. That gives actually more coverage. Is there anything in the record that tells us that Base Place did not have insurance coverage in effect at the time the complaint was filed by Ms. Woods? Not with us. I'm assuming they had it with another carrier. I don't know. What I'm asking is, is there anything in the record that tells us that? No, there's nothing. We don't know whether they had coverage with another carrier after. What tells us they didn't have coverage with you in the record? Because the policy period ended in April of 2007, and the complaint was filed and reported after that. So our policy was done. There was never a demand made before? A demand made by the insured party on Base Place? When I asked you what was required for a claim, you said a demand or a complaint. Right. Demand for money damages. Was there a demand ever made here prior to the end of 2007? Not that I know of. Well, isn't that important, if a demand is indeed a claim? If a money demand had been made on Base Place and reported to Prime during a policy period, then that would be proper notice on our claims made and reported. But we don't know if there was one, as I understand it, in response to my question. I haven't seen one. I mean, I would assume it would be there if there was one. But I think it was the complaint. It just seems odd that the complaint gets filed, but there was never a demand for damages. I think that happens very often, where someone just gets injured and eventually they file a complaint. It seems like they usually work with an adjuster first, and when they can't come to an agreement, they file a complaint. Well, I'm thinking of the injured party. I mean, the injured party can sue as long as they do it within two years. The demand you're talking about is the demand that the injured party would make on the borrower. That's correct. A claim has to be made on the insurer, and then that demand has to be reported to the insurance company in writing. Those are the two things that make it a claims made and reported policy. Okay. Just to clarify, but we don't know here whether a demand was made by the injured party? We do not, but we do know that if we look at the letter that the adjuster wrote back and talked about some sort of notice being given on May 2nd, 2007, now that could have, I guess, arisen out of a demand by the injured party. We don't know. May 2nd, 2006, I think, isn't it? That seems like a pretty pertinent fact question not to know for a summary judgment case. But even if we assume that that May 2nd notice on the carrier was based on a demand by the injured party, that happened in the second policy period. So what? You already told us that if it happens in the second policy period, there's retroactive coverage. But we don't know when the demand was made. What difference if it's either in the first or the second, as long as you had your insurance there? If the demand was made on Bass Place and then reported to the carrier in the same policy period, then, yeah, there would be notice. That's correct. Then is that something that Bass Place needed to plead? Yeah. Yes. Or answer? They had to show that a written demand was made upon them, and they put it in writing to the carrier in the same policy period. That didn't happen. Well, something happened because they gave two notices, the way I understand it. The agent, within a very short period of time following the incident, gave notice. Right. And then, within about 90 days, May 2nd, 2006, a faxed, written notice of this claim was given to Prime America. Right. I don't know what that was. So you would think that was triggered by some type of a demand. Right. Otherwise, why were they doing it? It may have been. I don't know. I can't tell from the record. And then you're asking us to assume that during what would have been a third policy period, that there was no insurance in effect. I don't know if there was insurance. They may have had… No Prime America insurance. That's true. How do we know that? I don't know of anything in the record that tells us that 06-07 was the final period. Is there something? If you could point me to it, I'd be grateful. I mean, we referenced the policies that they had. If there had been another policy, I assume we would have referenced that, too. And then how would we know if Base Place bought a tail so that they still carried coverage for those first two periods? Is there anything in the record that tells us they did or did not purchase tail coverage? I don't know. I don't believe there is. And I don't believe they did, but… But there's nothing in the record that we can look to to tell us. That is true. Okay. It's complicated. I agree. Now let me just move on to the actual… We don't need, really, this notice argument because we've got the assault and battery exclusion, which, as I pointed out, is the purpose of a manuscript hard-to-write policy. They do not want to cover shootings and bars, basically. If I can just go to our exclusion. Number seven. This exclusion precludes coverage for claims related to or arising out of, which is very broad, actual or alleged assault and or battery, whether caused by or at the direction of the insured, the insurer's employees, or patrons, or from any cause whatsoever. This policy excludes claims, accusations, or charges of negligent hiring, which is in the complaint, placement, training, or supervision, which is in the complaint, regarding any actual or alleged assault and battery. Okay. If, as is contained in the claim that was made in writing, and the way I remember it is somebody was tackled in the bar and the gun discharged, and a bystander was accidentally shot, how is that an assault and battery? Well, I think the complaint is the gun discharged and the plaintiff was accidentally shot. But under Illinois law, if you strike the wrong person, it's still a battery. It's still an assault. But you had to be trying to strike somebody. Right. That's the point I'm getting at. If you get tackled and the gun goes off. That's an accident. Were you not pointing at anybody? Well, I don't know if they got tackled. I think that's what it says. I mean, that's the only thing we've got on the record. And we cited cases from other jurisdictions where just such a thing is considered an assault or a battery. So the gun discharged in the bar, however it happened. How can an accident be an assault or a battery? Whether it's criminal or civil, it requires an intentional act. Well, I guess it's the bringing of the gun into the bar, and it going off can be considered an assault or battery. Even if you don't intend to shoot somebody, you end up shooting them. But it's an intentional tort, both of them, aren't they? Yes. From the case we cited, the intentional act is the bringing of the gun into a bar where you're not supposed to and it going off. It may be an accident that went off, but if I'm trying to shoot person A and I shoot person B, that's an accident. But it's still a battery. It's still an assault. Because of transferred intent. But you can only have transferred intent if there's original intent. And if what we know in the record is a man was tackled and a gun went off, I don't know what that means. I don't know what it could mean. Okay. Well, if I could go further in this exclusion. No coverage is provided for claims alleging negligent hiring or entrustment, training or supervision, failure to provide adequate security, or other allegations of intentional, negligent, or reckless conduct related to actual or alleged assault and or battery. The whole point of this exclusion is to avoid coverage for bar incidents or knife fights. But why didn't they just say that? There's no coverage here for knife fights or shootings of any kind. That's not what it says. It says for assaults and batteries. Right, which would encompass a knife fight or a shooting. It would encompass most knife fights or shootings, but it might not cover an accidental discharge of a weapon. Well, if we're going to say that an accidental discharge of a weapon isn't an assault or battery, then yeah. But we still have in this exclusion, which they raised the issue of in their complaint, negligent supervision, negligent hiring. I think they conceded today at oral arguments that that particular paragraph of their complaint would meet an exclusion. But if you strike that, the rest of their complaint would still stand. Well, if you strike it, but that's what the complaint says. We don't look at the labels put on voluntary undertaking according to our Supreme Court. We look at the allegations. Right, but that was just one allegation of five or six. Sure, but well, negligent failed to maintain its premises, negligently failed to warn, negligently failed to search, negligently failed to restrain, negligently hired security guys not properly trained or supervised, negligently allowed an individual to enter a gas place with a dangerous weapon. I mean, those are all the allegations of the complaint. That all goes to negligent supervision, negligent hiring, negligence. So with or without the assault and battery exclusion, which is more specific, these are the types of things the policy excludes. And they are alleged in the complaint. Well, in paragraph E they are. I'm not sure all those other ones you read come under negligent supervision or hiring. Those are actual acts of negligence by employees. Well, but if I go back to the exclusion, Your Honor, no coverage is provided for claims alleging negligent hiring or entrustment, training or supervision, failure to provide adequate security or other allegations of intentional, negligent or reckless conduct related to actual or alleged assault and battery. So it's not just negligent hiring and supervision. It's all the allegations in this complaint. They can label it a voluntary undertaking, but it's the allegations that count. And sure, if we eliminated the allegations, perhaps there would be coverage. But that's what the complaint says, and that's what we go with. Thank you, counsel. We'll hear from Robottle now. If we consider the allegations the way that counsel has asked us to consider the allegations in light of the insurance contract, I'd like to make a hypothetical which would also, according to that logic, be barred. If an employee was mopping the bathroom floor and they accidentally kicked over the mopping bucket, picked up the bucket, walked out, did not clean up the water, somebody comes in and slips on that water, a slip and fall which has been admitted would be covered by this policy. Technically, did the staff fail to train that employee well enough to mop up that water? Sure. Did the employer fail to supervise that employee and say, hey, as your supervisor, you need to go in and mop up that water? Absolutely. But it's not whether circumstantially or coincidentally an employer also fails to supervise or fails to direct an employee or fails to properly train an employee. The crux of the negligence is the act of the employee. It's a respondent superior type allegation. It's not an allegation of the employer knew that there was a specific factor of this employee that would cause him to increase the likelihood of injury. And without that specific factor, it's not a negligent hiring or retention case. If this were a negligent hiring or retention case, I would lose  the likelihood of allowing a patron into the bar with a weapon. Without those specific factors, it just doesn't fit. The trial court relied upon exclusion 3B, correct? Yes, Your Honor. And I'm looking at that language. Towards the end, set off by commas, is the phrase negligent supervision. And my question is, would that refer to negligent supervision of the security guards in this case? And if so, isn't that a problem for you? To answer your first question, I do not believe it applies to the guards in this case. Well, what does that mean? It doesn't even seem to me to fit in with the rest of the language. Oh, it's the second line from the bottom under 3B in the contract, the insurance contract. Set off in commas is just the phrase negligent supervision. If I understand your question correctly, it's why... My question is, what does that refer to? Well, I think at the outset it's a vague term that no one really knows what it refers to. Which, again, means it should be construed in favor of the plaintiff. So if I could offer you the most favorable... Well, what I'm trying to get at, I'm probably not phrasing it right. Maybe because I just don't understand it. But does the negligent supervision, that phrase, have anything to do with hiring? Or is it something more than just how were these people hired, were they properly trained? And if so, it seems to me that that language is problematic for your case. Well, if I can answer that twofold, but first to directly answer your question, I think that negligent supervision, as it's written here, because it's not otherwise defined, we should look at the legal definition of negligent supervision, which really ties into the idea of negligent retention. I mean, the case law refers to them similarly, although I wouldn't say to necessarily use them interoperatively. A negative supervision or negative retention of an employee is that we had a lot of sexual abuse cases, and it's the only thing that's come to mind. I apologize for the nature of it. But if the Catholic Church knows that a priest, they didn't know when they hired them, but now they know that the priest is sexually assaulting children, if they allow the priest to continue on, or they move the priest to another diocese, then they're negligently retaining and supervising that, and thereby negligently supervising that priest by allowing him to do that. They're one and the same. In other words, they know of the particular harm that the priest has which causes a danger. That cause is that he will hurt children, and children will give him a deference because of his position. By allowing him to be moved instead of cutting him out totally, they're negligently supervising and retaining that employee. And I think that without another definition, we have to look at this as defined by its legal definition. And let me kind of dovetail that with the same example that I made before. Negligent supervision, if this reads as Your Honor is asking me, if that's how it reads, would cover everything. I mean, any responded superior claim, you could say, well, it's because the employee was negligently supervised. I used the kicking over the mop bucket earlier. May I finish my statement? You may. Could the employer have said, hey, employee, you kicked over a bucket of water. You need to go clean that up. Would that have been the proper way to supervise? Absolutely. But the negligence of the employee can exist in and of itself without a failure supervised by a faith-based place. And I think that that's the distinguishing factor in this case. I take this matter under five.